Paul Anthony MONROE, Petitioner,

v.

**David SMITH, Respondent,**

No. 00–CV–73606–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 15, 2001.

Paul Monroe, New Haven, MI, Pro se.

William C. Campbell, Laura G. Moody, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for David Smith, respondent.

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS[1]

TARNOW, District Judge.

Paul Anthony Monroe, ("petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction and sentence on one count of bank robbery, M.C.L.A. 750.531; M.S.A 28.799.

---

1. Staff Attorney Daniel H. Besser provided quality research assistance.

For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. *Background*

Petitioner was convicted of the above offense following a jury trial in the Detroit Recorder's Court. Petitioner's conviction was affirmed on appeal. *People v. Monroe,* 204719 (Mich.Ct.App. November 23, 1999); *lv. den.* 462 Mich. 897, 642 N.W.2d 676 (2000). This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See United States ex. rel. McDonald v. Page,* 108 F.Supp.2d 993, 996 (N.D.Ill.2000); *Briggs v. Makowski,* 2000 WL 1279168, * 1 (E.D.Mich.2000)(Borman,J.):

> On March 14, 1996, at approximately 2:15 p.m., the National Bank of Detroit (NBD), located at 7340 Grand River in the city of Detroit, was robbed. The perpetrator handed a teller a deposit slip which included the words, "Give me the money. Don't move. All out the cash drawer." The teller gave the man approximately $ 800 along with an exploding dye pack. Bank surveillance photographs depicted the perpetrator at the teller's window and leaving the bank after receiving the money. On March 15, 1996, at approximately 4:30 a.m., two Detroit police officers received a police run instructing them to go to the corner of West Warren and Lawton to meet a man named Paul Monroe who wanted to turn himself in for robbing a bank. When the officers arrived at the corner, defendant approached them and stated that he wanted to turn himself in for robbing a bank on Grand River and West Grand Boulevard. The officers observed red dye on the defendant's clothing and hands. Defendant was arrested after the officers confirmed that the robbery had occurred. After being advised of his constitutional rights, defendant gave the arresting officers detailed information regarding the robbery and gave a detailed, signed statement to a Detroit police investigator.

*People v. Monroe,* Slip. Op. at * 1.

In addition to these facts, the Court notes that the teller in question, Barbara Davis, positively identified petitioner at trial as being the person who robbed her at the bank on March 14, 1996. Additional facts will be discussed when addressing petitioner's claims. Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Denial [of] effective assistance of counsel.

II. Double Jeopardy clause [violation].

III. Newly discovered evidence.

IV. Unconstitutional search and seizure.

## II. *Standard of Review*

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir.1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Su-

preme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor,* 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

### III. *Discussion*

A. Claim # 1. The ineffective assistance of counsel claim.

In his first claim, petitioner alleges that he was denied the effective assistance of counsel.

### 1. *Standard of Review.*

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.; O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994). In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Second, the defen-

dant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### 2. *The individual claims*

A. Failure to object to the in-court identification of petitioner by Barbara Davis.

Petitioner first claims that his trial counsel was ineffective for failing to object to the in-court identification of him as the perpetrator by Barbara Davis. Petitioner contends that trial counsel should have objected to this in-court identification, because Ms. Davis failed to identify petitioner at a police lineup conducted subsequent to his arrest. Petitioner also claims that counsel should have objected to the in-court identification, because it was brought about by the subornation of perjury.

■■■■ A defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive procedure. *English v. Cody,* 241 F.3d 1279, 1282–1283 (10th Cir.2001)(citing to *United States v. Wade,* 388 U.S. 218, 240, n. 31, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *United*

States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

■ Petitioner contends that the in-court identification of him by Davis was somehow tainted because she was unable to identify him either at a pre-trial line-up or at the preliminary examination. The fact that a witness cannot identify an accused at a pre-trial lineup procedure is not a reason to exclude his or her testimony identifying the accused in court; the failure to identify an accused during a pre-trial lineup goes only to the weight of the witness's identification testimony and not to its admissibility. *United States v. Causey,* 834 F.2d 1277, 1286 (6th Cir.1987); *United States v. Hamilton,* 684 F.2d 380, 383 (6th Cir.1982). Michigan law is in accord on this point. *See People v. Barclay,* 208 Mich.App. 670, 676, 528 N.W.2d 842 (1995). Trial counsel's failure to move to suppress this allegedly unreliable in-court identification would not be ineffective assistance, absent a reasonable probability that this motion would have resulted in a decision to exclude the testimony. *See White v. Helling,* 194 F.3d 937, 941–942 (8th Cir.1999). In light of the fact that Davis' failure to identify petitioner at the pre-trial lineup or at the preliminary examination would not have excluded her in-court identification of him as the perpetrator, counsel was not ineffective for failing to move for its suppression. *White v. Kapture,* 2001 WL 902500, * 9 (E.D.Mich. 2001)(O'Meara, J.).

■ Moreover, defense counsel cross-examined Ms. Davis extensively about the fact that she had failed to positively identify anyone at the pre-trial lineup and also questioned her about the discrepancies between her description of the suspect to the police and petitioner's actual appearance. The decision to attack the credibility of Ms. Davis' identification of petitioner through extensive cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See Killebrew v. Endicott,* 992 F.2d 660, 665 (7th Cir.1993).

■ With respect to counsel's failure to object to the allegedly perjured testimony of Barbara Davis in identifying petitioner as being the perpetrator in this case, petitioner's claim initially fails because he has failed to show that the government knowingly used perjured testimony in this case or that Davis' testimony was material to petitioner's conviction. (See issue II, *infra*). In any event, petitioner's counsel would have been unable to have Ms. Davis' in-court identification suppressed simply because she may have committed perjury. The credibility of an in-court identification is to "be resolved ultimately by the jury after the defendant has had an opportunity to test the accuracy of an identification through cross-examination." *United States v. Allen,* 930 F.2d 1270, 1273 (7th Cir.1991)(internal citations omitted). Michigan law is in accord on this point. *See People v. Major,* 34 Mich.App. 405, 416–417, 191 N.W.2d 494 (1971)(whether victim of armed robbery was telling the truth when she stated in court that she could identify defendant was a matter for trier of fact to determine.). Thus, petitioner's counsel would not have been able to have Davis' in-court identification suppressed on the ground that she committed perjury. Moreover, petitioner's counsel extensively cross-examined Ms. Davis about her failure to identify petitioner at the pre-trial lineup and the discrepancies between her description of the perpetrator and the actual appearance of petitioner. Counsel also questioned Davis about the fact that she initially thought that petitioner had written his note demanding the money on the back of the deposit slip, when, in fact, the demand note had been written on the front of the deposit slip.

Counsel was therefore not ineffective for failing to object to Davis' alleged perjured testimony, where counsel subjected Davis to an extensive cross-examination. *See United States v. Cook*, 130 F.Supp.2d 43, 47–48 (D.D.C.2000)(defendant was not denied effective assistance of counsel by counsel's failure to object to government's alleged misconduct in knowingly using perjured testimony, where counsel extensively cross-examined witness to impeach his testimony, and presented police detective's testimony contradicting witness's statement.).

B. Failure to investigate or call alibi witnesses.

Petitioner next alleges that counsel was ineffective for failing to investigate or call alibi witnesses.

 In order to show that he was prejudiced by trial counsel's failure to investigate or present alibi witnesses, a habeas petitioner would have to show that but for counsel's failure to adequately investigate, prepare, and present these alibi witnesses, there was a reasonable probability that the outcome of petitioner's trial would have been different. *Fargo v. Phillips*, 129 F.Supp.2d 1075, 1093 (E.D.Mich.2001)(Tarnow, J.). If a known alibi witness is available to testify that a criminal defendant was with them "at about the time" of the crime's commission, this would be sufficient to require counsel to fully investigate this witness. *Id.* at 1095 (citing to *Washington v. Smith*, 219 F.3d 620, 633 (7th Cir.2000)).

 In the present case, petitioner does not identify who his proposed alibi witnesses would be, nor does he even specify the precise nature of his alibi defense by indicating his whereabouts at the time of the crime. Defense counsel's failure to investigate, interview, or present alibi witnesses does not amount to the ineffective assistance of counsel, because petitioner

has failed to identify these witnesses, indicate their availability, or specify the content of their testimony. *United States v. Green*, 21 F.Supp.2d 521, 525 (D.Md.1998); *See also United States v. Saenz*, 923 F.Supp. 1079, 1083 (N.D.Ill.1996). Petitioner's vague and speculative allegations that defense counsel was ineffective for failing to investigate alibi witnesses does not entitle him to habeas relief. *See United States ex. rel. DeCreti v. Wilson*, 967 F.Supp. 303, 307–308 (N.D.Ill.1997).

 Moreover, as respondent points out in her brief, presenting an alibi defense would have been inconsistent with the other evidence in this case that pointed to petitioner's presence at the bank, including the red dye from the exploding dye pack found on his clothing, as well as the two separate statements that he made to the police that he committed this bank robbery. In the present case, trial counsel was not ineffective for failing to present an alibi defense, where petitioner's two statements to the police, which established his presence at the crime scene at the time of the robbery, was materially inconsistent with an alibi. *See Lindsey v. Smith*, 820 F.2d 1137, 1152 (11th Cir.1987); *United States ex. rel. Rhoads v. Barnett*, 22 F.Supp.2d 765, 774 (N.D.Ill.1998); *See also Coe v. Bell*, 161 F.3d 320, 342–343 (6th Cir.1998)(counsel's decision to pursue insanity defense rather than an alibi defense was "eminently reasonable", given defendant's confession).

3. *Conclusion*

Petitioner was not deprived of the effective assistance of counsel.

B. **Claim # 2. The Double Jeopardy and perjured evidence claim.**

In his second claim, petitioner claims that the prosecutor knowingly used false or perjured testimony to obtain a convic-

tion against him. Petitioner argues that because the prosecutor knowingly used false or perjured testimony to obtain a conviction, a writ of habeas corpus should issue and the prosecutor should be prevented, under the Double Jeopardy clause of the Fifth Amendment, from retrying him for this offense.

 The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d at 343. However, mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989); *Coe v. Bell*, 161 F.3d at 343. Additionally, the fact that a witness contradicts herself or changes her story also does not establish perjury. *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir.1993). Moreover, the presentation of a witness who recants or contradicts his or her prior testimony is not to be confused with eliciting perjury. *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir.1998)(citing *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir.1978)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Sassounian v. Roe*, 230 F.3d 1097, 1107 (9th Cir.2000)(citing to *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Petitioner claims that Barbara Davis committed perjury when she testified at trial that she had positively identified petitioner previously at the preliminary examination. Petitioner claims that Davis did not, in fact, positively identify petitioner at the preliminary examination, therefore, her trial testimony was false.

At the preliminary examination, the prosecutor asked Ms. Davis if there were anything about the suspect's build, height, or coloration that was not consistent with the petitioner's appearance at the preliminary examination. Davis indicated that although the perpetrator had a small beard, petitioner did not have a beard or any facial hair. Davis was never actually asked to positively identify petitioner at the preliminary examination. At trial, Davis testified that at the preliminary examination, she had recognized petitioner as being her assailant. However, on cross-examination, petitioner's attorney confronted Davis with her preliminary examination testimony, in which she indicated that petitioner's appearance differed from the perpetrator's appearance, in that petitioner was not wearing a beard at the preliminary examination.

 Petitioner's perjured testimony claim fails for several reasons. First, petitioner has not shown that the victim testified falsely when she testified that she had recognized petitioner as being the bank robber at the preliminary examination. Davis' testimony from the preliminary examination does not indicate that she was unable to identify petitioner as having committed the bank robbery, but only that petitioner was not wearing a beard or any facial hair at the preliminary examination. Davis, in fact, was never asked to identify petitioner at the preliminary examination and never testified at the preliminary examination that she was unable to identify petitioner. Therefore, petitioner has failed to show that Davis' trial testimony was false.

■ Secondly, Davis was questioned extensively by defense counsel at trial about her previous failure to identify petitioner at a pre-trial police lineup and was confronted with her preliminary examination testimony, in which she indicated that petitioner's appearance differed from that of the perpetrator, in that he was not wearing a beard at the time of the preliminary examination. Defense counsel also cross-examined Davis about other discrepancies between her trial testimony and her statement to the police concerning both her description of the perpetrator and the details she gave with respect to the offense. The presentation of a witness who may have contradicted herself did not deprive petitioner of due process where the jury heard all of the versions of the witness' stories and the witness was thoroughly impeached. *See Tapia v. Tansy,* 926 F.2d 1554, 1563 (10th Cir.1991). It was for the jury to decide which version of the testimony to believe. *Id.*

■ Finally, in light of the additional evidence presented against petitioner, including his two statements to the police, petitioner is unable to establish the materiality of Ms. Davis' testimony for the purposes of a perjured evidence claim. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The newly discovered evidence claim.

In his third claim, petitioner contends that he is entitled to habeas relief based upon newly discovered evidence which he claims establishes his innocence. Petitioner first claims that he has newly discovered evidence that another person's fingerprints were found on the note used during the bank robbery. Petitioner also claims that he has newly discovered evidence to show that the police forged the complaint and arrest warrant against him.

■ "A claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief." *Hence v. Smith,* 37 F.Supp.2d 970, 980 (E.D.Mich.1999)(Gadola, J.). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact." *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *J.C. Dickey v. Dutton,* 595 F.Supp. 1, 2 (M.D.Tenn.1983). Thus, petitioner's claim that he has newly discovered evidence of his innocence does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer,* 159 F.Supp.2d 582 (E.D.Mich.2001)(Tarnow, J.).

Additionally, even those federal courts that have suggested that habeas relief could be granted upon newly discovered evidence have set an extraordinary showing of petitioner's innocence before habeas relief could be granted. In *White v. Keane,* 51 F.Supp.2d 495, 502–503 (S.D.N.Y.1999), the federal court indicated that in order for newly discovered evidence to warrant habeas relief, the evidence must be "so compelling" that it would violate the fundamental fairness embodied in the Due Process clause not to afford the petitioner a new trial where the new evidence could be considered. *See also Alleyn v. Warden,* 878 F.Supp. 30, 31 (M.D.Pa.1995)(in order to be granted habeas relief on an allegation of newly discovered evidence, the petitioner must make at least a "truly persuasive demonstration of innocence").

■ In the present case, this Court concludes that petitioner has failed to make a persuasive or compelling demon-

stration through this evidence that he is innocent of this crime or even that it would likely produce an acquittal. Even on direct appeal, motions for a new trial based upon newly discovered evidence are "are disfavored and should be granted with caution." *United States v. Turns,* 198 F.3d 584, 586 (6th Cir.2000). When a defendant makes a motion for a new trial based upon newly discovered evidence, a defendant must show:

1. the evidence was discovered after trial;

2. the evidence could not have been discovered earlier with due diligence;

3. the evidence is material and not merely cumulative or impeaching; and

4. the evidence would likely produce an acquittal if the case were retried.

*United States v. Turns,* 198 F.3d at 586–587.

Petitioner has failed to show that he has newly discovered evidence that would likely produce an acquittal if the case were retried. With respect to petitioner's claim involving the presence of another fingerprint on the note used during the robbery, petitioner has offered no new evidence in support of this claim. The only evidence that could possibly support petitioner's claim was produced at trial, when Brian Fountain, an investigator for the Detroit police, testified that a latent fingerprint was obtained from the bank note, but that the Latent Print Section of the Detroit police was unable to read the fingerprint. (T. 02/24/97, pp. 98–99). This testimony does not establish that another perpetrator's fingerprints were on the bank note. Investigator Fountain, in fact, testified that the fingerprint could have belonged to Ms. Davis. (*Id.* at p. 99). In any event, evidence of this unidentified fingerprint on the note used during the robbery would not entitle petitioner to a new trial, because this print could have been placed on the bank note at any time. *See Stafford v.*

*Saffle,* 34 F.3d 1557, 1561–1562 (10th Cir.1994)(allegedly new evidence of unidentified fingerprints found on the tailgate of murder victims' pickup truck fell short of the "extraordinarily high showing of actual innocence" needed to render capital punishment of habeas petitioner unconstitutional, where the unidentified bloody fingerprints could have been placed on the tailgate of the truck when it was parked at the airport after the murders).

 Petitioner also claims that he is entitled to habeas relief on the basis of newly discovered evidence that the complaint and arrest warrant were forged by the police. The only evidence that petitioner offers to show that these documents were somehow forged was the fact that Barbara Davis was listed as the complaining witness on the complaint, even though she had failed to positively identify petitioner at the pre-trial police lineup. This evidence is not newly discovered, because petitioner and his counsel were presumably provided with copies of the complaint and arrest warrant, and if not, could have obtained them from the court file. *See United States v. Atkins,* 545 F.2d 1153, 1154 (8th Cir.1976)(evidence that a complaint filed by a narcotics agent with a U.S. Magistrate contradicted the trial testimony of other narcotics agents was not newly discovered, where defense counsel was furnished with a copy of the complaint prior to trial and could have pursued the matter during trial had he been so inclined). In addition, the mere fact that Barbara Davis was unable to positively identify petitioner at the police lineup does not negate the fact that she was the victim of the bank robbery in this case and hence, the proper complainant. Petitioner is therefore not entitled to a new trial on this claim. *See Johnson v. United States,* 301 F.2d 547, 548 (D.C.Cir.1962)(newly discovered evidence consisting of a complaining

0

witness's testimony that he had not made complaint which resulted in the defendant's arrest did not entitle defendant to a new trial when the arrest warrant application which resulted in the arrest was in fact and in law that of the complaining witness).

 Lastly, petitioner claims that he should be entitled to a new trial because of death threats that he received from the arresting officers while incarcerated. Petitioner does not specify the nature of these threats in his petition. However, in one of the two responses that he filed to respondent's answer, petitioner claims that on the night that he was arrested for this offense, petitioner refused to go with the officers. Petitioner claims that he was afraid of the officers, because he had previously tape recorded the two officers raping and murdering a fourteen year old girl in an alley in Warren, Michigan. Petitioner offers no evidence in support of this claim. However, in light of the fact that petitioner was aware of this evidence prior to trial, petitioner is unable to establish that these alleged death threats constitute newly discovered evidence for purposes of obtaining a new trial.

In the present case, none of the evidence offered by petitioner was so compelling that the failure to grant petitioner a new trial on the basis of this new evidence would violate due process. Accordingly, petitioner is not entitled to habeas relief on this claim.

### 4. Claim # 4. The unconstitutional search and seizure claim.

In his final claim, petitioner alleges that the statements that he made to the police should have been suppressed as the fruit of an unlawful arrest.

An evidentiary hearing was conducted on petitioner's Fourth Amendment claim in the state trial court on October 25, 1996. Prior to the hearing, petitioner's second court appointed attorney, Jeffery Edison, stated that petitioner was representing himself with respect to the motion to suppress. Edison indicated that he was present to assist petitioner in this matter. Edison further noted that the trial court had previously addressed the issue of self-representation with petitioner. Petitioner proceeded to conduct the examination and cross-examination of the witnesses. However, Mr. Edison made an objection to one of the police officer's testimony. At the continuation of the evidentiary hearing, petitioner again cross-examined the witness. Petitioner then made a closing argument on his behalf. Mr. Edison, however, clarified petitioner's argument concerning the illegality of the arrest in his own closing argument with the court. (*Id.* at pp. 12–13). The trial court subsequently denied petitioner's motion to suppress, finding petitioner's arrest to have been legal.

On appeal, the Michigan Court of Appeals found that petitioner's statement to the police that he wanted to turn himself in for a bank robbery, the red dye found on petitioner's hands and clothes, and the police officers' confirmation that a robbery had, in fact, occurred, was sufficient to give the police probable cause to arrest petitioner. *People v. Monroe,* Slip. Op. at * 4.

 A federal habeas review of a petitioner's arrest or search by state police is barred where the state provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell,* 428 U.S. 465, 494–495, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000); *Gilbert v. Parke,* 763 F.2d 821, 823 (6th Cir.1985). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not

have been frustrated by a failure of that mechanism. *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.1982). Thus, on federal habeas review, a federal court cannot reexamine a petitioner's fourth amendment claim that post-arrest statements should have been suppressed as "poisonous fruit" of his illegal arrest, where the state provided an opportunity for full and fair litigation of petitioner's Fourth Amendment claim prior to trial. *Jones v. Johnson,* 171 F.3d 270, 277–278 (5th Cir.1999); *Pierson v. O'Leary,* 959 F.2d 1385, 1391–1392 (7th Cir.1992).

 In the present case, petitioner is precluded from raising a Fourth Amendment claim that his confession was the product of an illegal arrest when he raised the factual basis for this claim in the state trial and appellate courts, and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *United States ex. rel. Rice v. Washington,* 987 F.Supp. 659, 661 (N.D.Ill.1997).

 Moreover, even assuming that this Court could review petitioner's Fourth Amendment claim, petitioner has failed to establish that the police lacked probable cause to arrest him for the bank robbery. The Fourth Amendment permits a duly authorized law enforcement officer to make a warrantless felony arrest in a public place after developing probable cause for an arrest. *United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Anderson,* 42 F.Supp.2d 713, 719 (E.D.Mich.1999)(Gadola, J.). The standard for determining probable cause to make an arrest is whether the facts and circumstances were sufficient to warrant a prudent officer in believing that the suspect had committed or was committing a crime. *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

 In the present case, Detroit police received a police run to meet a man named Paul Monroe, who wanted to turn himself in for committing a bank robbery. Petitioner is correct that an anonymous or uncorroborated 911 call would be insufficient in and of itself to establish probable cause to arrest petitioner. *See Kerman v. City of New York,* 261 F.3d 229, 236 (2nd Cir.2001)(uncorroborated and anonymous 911 call insufficient to establish probable cause for a warrantless entry into private dwelling). However, in the present case, the police had additional information which provided them probable cause to arrest petitioner. When police arrived at the location, petitioner approached the officers and informed them that he wanted to turn himself in for robbing a bank at Grand River and West Grand Boulevard. Petitioner's voluntary admission to the police would be sufficient to establish probable cause to arrest him for this crime. *See e.g. United States v. Webster,* 162 F.3d 308, 332 (5th Cir.1998)(defendant's admission that he possessed marijuana gave police probable cause to arrest him, at the very least, for narcotics possession); *United States v. Gale,* 952 F.2d 1412, 1415 (D.C.Cir.1992)(probable cause existed for defendant's arrest when he admitted, after he was stopped by police, that he was in possession of illegal drugs); *Government of Virgin Islands v. Kirnon,* 377 F.Supp. 601, 604 (D.Virgin Islands 1974)(confession given by defendant to police officer shortly before defendant's arrest constituted reasonable cause for believing that defendant had committed the offense).

 In addition, officers observed red dye on petitioner's clothing and hands. The appearance of this red dye from an exploding dye pack also provided the police with probable cause to arrest petitioner for bank robbery. As the Tenth Circuit recently noted: "[D]ye-packs are not avail-

able to the public, and are primarily used to mark money stolen from banks." *United States v. Edwards*, 242 F.3d 928, 935 (10th Cir.2001). In *Edwards*, the Tenth Circuit held that the police did not lose probable cause to arrest the defendant, who was discovered outside of a bank with a bag full of stacked bills stained with what appeared to be red bank dye, even after learning that the report of a bank robbery had been false and that no robbery had occurred, where the defendant gave implausible and inconsistent explanations for his possession of money. The Tenth Circuit concluded that the police had probable cause to believe that either a bank robbery or possession of stolen money had occurred, although they could not identify a victim or an exact crime. *Id.* at pp. 934–935.

In the present case, not only was petitioner covered with the red dye used to mark money in banks, petitioner informed the police that he wanted to turn himself in for the bank robbery. Police verified that a bank robbery had taken place at the location that petitioner had identified as being the scene of his crime. The Michigan Court of Appeals' determination that the police had probable cause to arrest petitioner was not contrary to, or an unreasonable application of, clearly established federal law, and thus, does not warrant federal habeas relief. *See Jackson v. Anderson*, 141 F.Supp.2d 811, 838 (N.D.Ohio 2001). Petitioner is not entitled to habeas relief on his final claim.

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**